## SAILLY *vs.* CLEVELAND & HUTTON.

This court has jurisdiction of an action on an instrument taken by a collector of the customs of the United States, for the delivery on demand of certain property seized or forfeited to the United States : the fact of forfeiture and the regularity of the seizure being admitted by the instrument.

Where one person by *simple contract,* i. e. by a *contract not under seal,* makes a promise to another for the benefit of a third, the third person may main - tain an action on such promise, provided he has an exclusive interest in the subject of the promise ; but where the person to whom the promise is made furnishes the consideration and has the legal interest, the action must be brought in his name. And *it was accordingly holden,* where a *collector* of the customs put certain property seized by him into the hands of a third person and took a promise for its delivery on demand to the *marshal* of the district, or to the deputy of such marshal, that the marshal having no in-terest in the property, and the collector having an interest in it, being the contracting party and furnishing the consideration, the suit on the contract must be brought in the name of the collector.

DEMURRER to declaration. The action in this case is as-sumpsit ; the declaration contains three counts and the third count is demurred to. In it the plaintiff states, for that where-as heretofore, to wit, on the 10th November, 1829, at, &c. in consideration that the plaintiff at the special instance and re-quest of the defendants, had caused to be delivered to them certain goods and chattels, to wit, one white horse, (&c. specify-ing the property) to be taken care of and safely and securely kept by the defendants for the plaintiff, it was agreed by the de-fendants, by an agreement then and there made by them in the words and figures following, to wit : "We William Cleveland and George Hutton of the county of Franklin, and state of New-York, having been appointed by F. L. C. Sailly, Esq. collector of the customs for the district of Champlain, for the purpose of keeping and storing one white horse about 14 years old, and one sorrel horse age not known, also one double harness and a double waggon, seized by Samuel H. Payne, officer of the customs for the district of Champlain, as forfeit to the United States as is alleged : Now, therefore, we William Cleveland and George Hutton do jointly and severally ac-knowledge to have received from the said collector by the

hands of Samuel H. Payne, deputy collector, the said horses, waggon and harness above mentioned, all of which are in good condition and which have been estimated to be worth $150, and which we jointly and severally promise to keep with due care and at our own risque and peril, accidents by the act of God only excepted ; and we also jointly and severally promise and obligate ourselves to deliver the said horses, waggon and harness above mentioned to the marshal of the northern district of the state of New-York, or to his deputy, on demand ; and as indemnification and full compensation of the expense and care of keeping the said horses, waggon and harness with due care as aforesaid, we are allowed to use the said horses waggon and harness for our sole use and benefit, and we agree to use the same with due care as a full compensation for the care and expense of keeping the same until demanded by the marshal or his deputy as aforesaid." (Signed by the defendants and dated November 10th, 1829.) And although the defendants then and there received the said goods and chattels for the purposes aforesaid, and although the defendants afterwards, to wit, on the 14th July, 1830, at, &c. were requested by Heman Cady, deputy of the marshal of the northern district of the state of New-York, and by the plaintiff, to deliver the said goods and chattels to the marshal of the northern district of the said state, or to him the said Heman Cady his deputy, or to the plaintiff ; yet the said defendants not regarding, &c. did not deliver, &c. but refused, &c. to the damage of the plaintiff of $300, and therefore, &c.

*M. T. Reynolds*, for the defendants, insisted that the action should have been brought by the *marshal* or his deputy, and that either of those officers might have sustained a suit upon this contract, (if a suit could be sustained by any one.) He cited *Schermerhorn* v. *Vanderheyden*, 1 *Johns. R.* 139, *M'Menomy* v. *Ferrers*, id. 72, *Weston* v. *Barker*, 12 id. 270, *Gould &* *Sill* v. *Phillips*, 10 id. 412, and *Farley* v. *Cleveland*, 4 *Cowen*, 432. That the marshal had an interest in the goods, as by the act of congress for regulating process in the courts of the U. States, passed May 8th, 1792, the custody of goods seized by officers of the revenue is given to the marshal. *Second.* That no action would lie upon the instrument declared on, as it did not

conform to the requirements of the 69th section of the act of congress of 2d March, 1799 ; and in support of this position he cited *Richmond* v. *Roberts,* 7 *Johns. R.* 329 ; *Strong* v. *Tompkins,* 8 *id.* 98. *Third.* That the count is bad in not averring that the goods were forfeited, or that any proceedings were ever had against them, and *non constat* but that they were returned to the owner from whom they were taken ; and *Fourth,* that as the district court of the United States has exclusive cognizance of all seizures on land-for violations of the law in relation to customs, this court has no jurisdiction.

*S. Stevens,* for the plaintiff. The regularity of the seizure or the title of the plaintiff to the property cannot arise upon this declaration, and this court has jurisdiction of questions arising collaterally under the laws of the United States. 2 *Wheaton,* 1. The action was properly brought in the name of the plaintiff, the contract was made with him, and the legal interest in the property is vested in him. 1 *Chitty's Pl.* 2, *n. b.,* and 4 *n. l. m.*.

*By the Court,* SAVAGE, Ch. J. From the terms of the instrument set forth in the last count of the declaration, it appears that the property in question had been seized by an officer of the customs within the district for which the plaintiff was collector. It does not follow from this fact that this court has no jurisdiction of the matter of contract between these parties. There is no question here about the fact of the forfeiture of this property or the regularity of the seizure by the officer ; those are subjects for inquiry in the federal courts. 2 *Wheaton,* 1. Both the forfeiture and seizure seem to be admitted by the written instrument between these parties. By the 69th section of an act to regulate the collection of duties on imposts and tonnage, passed March 2d, 1799, 3 *Biorm,* 199, it is enacted, "that all goods, wares and merchandize which shall be seized by virtue of this act shall be put into and remain in the custody of the *collector,* or such other person as he shall appoint for that purpose, until such proceeding shall be had as by this act are required to ascertain whether the same have been forfeited or not." By the 89th section

ALBANY,
Jan. 1833.

Sailly
v.
Cleveland.

of the same act, it is made the duty of the collector to prosecute for all penalties and forfeitures incurred within his district ; and he is authorized to *receive* the amount recovered, and distribute the same according to the 91st section, which directs him to pay one half to the United States ; the other half to be divided equally between the collector, naval officer and surveyor, &c. If information has been given by an informer, then he has one half of the collector's half, being one quarter of the whole, and the other quarter is to be divided among the officers above named, or such of them as then may be in the district. There is a provision in the 4th section of "an act for regulating processes in the courts of the United States," passed May 8th, 1792, as follows : "The *marshal* shall have the custody of all vessels and goods seized by any officer of the revenue, and shall be allowed such compensation therefor as the court may judge reasonable." If there is a collision between these two acts, the *latter must prevail*, which gives the custody to the collector until the decision of the question of forfeiture or not. It is not necessary, I apprehend, to decide that point. The makers of the instrument promise to deliver the articles to the marshal or his deputy. The only necessity there is for inquiring who is entitled to the custody of the property, is to enable the court to determine who ought to prosecute for a breach of the promise. Mr. *Chitty* says : "The general rule is, that the action should be brought in the name of the party whose *legal* right has been affected against the party who committed the injury." 1 *Chitty's Pl.* 1. Mr. *Hammond,* in his treatise on *Parties to Actions, p.* 3, says : "As civil actions are brought to repair some loss sustained, the party to whose use the fruits of the suit are to be appropriated, and whose interests have in fact been impaired, should complain. Why sue in the name of one who is to derive no benefit from the event, who has sustained no real loss for which to demand a reparation ?" This, however, he admits is not always the rule, for it is necessary to inquire who are the *parties to the contract,* for no one can complain of the breach of a contract but he with whom the contract has been made. In regard to *simple contracts,* that person must sue who has the legal interest. Where a consideration is necessary, as it is

to all simple contracts with but few exceptions, the interest resides with the party from whom the consideration moves, notwithstanding it may enure for another's benefit, or even is to be performed to another person. Thus it is said, were A. to promise B., for some consideration he has given him, to pay C. a sum of money, B. and not C. would be legally concerned in this agreement ; this he considers the old and the true rule. It is admitted that there are exceptions to this rule, or rather this author considers certain cases as of doubtful authority ; among which are the cases 1 *Bos. & Pul.* 101, *n.* and 3 *Bos. & Pul.* 149. The first is a note of a case cited in argument, where *Buller,* justice, is reported to have said, that independent of the rules which prevail in mercantile transactions, if one person makes a promise to another for the benefit of a third, that third person may maintain an action ; the second is the case of *Pigott* v. *Thompson,* 3 *Bos. & Pul.* 149, in which Lord Alvanly says : " If A. let land to B., in consideration of which B. promises to pay the rent to C., C. may maintain an action on that promise ;" though the rest of the court thought differently. He put it on the ground that C. would be only a trustee for A. A note to that case, after referring to the old cases, which are contradictory, considers the question settled by the case of *Dutton* v. *Pool,* 2 *Lev.* 210, which is also reported in *T. Raymond,* 302, as follows : Ralph Dutton and Grizil his wife declare against Nevil Pool, the defendant, that Edward Pool, father of the plaintiff Grizil, being possessed of certain trees in a certain park, intended to cut them down to raise portions. The defendant, who was remainder man, promised that if Sir Edward Pool would forbear to cut the trees, he, the defendant, would pay the plaintiff Grizil £1000. On non-assumpsit pleaded, the plaintiffs recovered ; and on error brought to the exchequer chamber, the judgment was affirmed, on the ground that " the action is maintainable by the party to whom the promise was made, or the *cestui que use ;* the promise was indifferently." Of this case, Lord Mansfield said, in *Martyn* v. *Hind, Cowp.* 443, that it was matter of surprize how a doubt could have arisen. This case Mr. *Hammond* considers as having been decided upon the relationship subsisting between the two : the one (the father) is act-

ing with the sole view of advancing his relation, in whose welfare he has so natural a concern, and must therefore be taken to have furnished the consideration as the daughter's agent. The case of *Schermerhorn* v. *Vanderheyden,* 1 *Johns. R.* 139, was much like *Dutton* v. *Pool,* upon the authority of which it was decided. The defendant in the court below, Schermerhorn, applied to his father for an assignment of his property, which the father gave the son, the defendant promising to purchase for his sister, the plaintiff's wife, a cherry desk. The court said, where one person makes a promise to another for the benefit of a third, that third person may maintain an action on such promise. This case has ever since been considered as correctly decided, and the principle a sound one, however it may be considered in England, though there I apprehend the principle is the same. All the cases referred to by the defendants' counsel are cases where the third persons for whose benefit the promise was made were *exclusively interested* in the subject of such promise. That is not the case here ; the marshal has no interest in the property seised and put by the plaintiff into the defendants' hands ; the promise was to deliver it to the marshal or his deputy, probably because if condemned it must be sold by the marshal, but he has no interest in the subject beyond his fees. The collector, the plaintiff, has an interest certain to a certain extent, and that to be determined by circumstances ; he is the contracting party ; he furnished the consideration ; he has the legal interest, and therefore he must prosecute. In all the cases where a third person has been permitted to sue on such a promise, such person had the legal interest. In *M'Menomy* v. *Ferrers,* 3 *Johns. R.* 71, it was held that an order to pay to Roosevelt was an assignment of the amount due on the securities mentioned, and therefore the drawers of the order had no interest and could not prosecute. Here the party in interest prosecutes. The declaration is good, and the plaintiff is entitled to judgment on the demurrer, with leave to the defendants to plead, on payment of costs.