The Union India Rubber Company *v.* Theodore E. Tomlinson.

As a general rule, a plaintiff cannot maintain an action in his own name, upon a common law contract made by the defendant to or with a third person.

This doctrine is not confined to instruments under seal nor in writing.

If the instrument be under seal, and the obligee be named therein, its terms are conclusive. It will be presumed that the obligor intended to render himself liable to no other person.

But if the contract be not under seal, the party for whose benefit it was made, may

The Union India Rubber Company v. Tomlinson.

maintain the action, though not named as promisee therein, either when it appears on the face of the instrument, that the contract was made for his benefit, or when it is shown, by extrinsic proof, that such a relation subsists between the promisee and himself, that the promise enures to the benefit of the latter, so that he has the legal interest therein.

So, also, when the contract is not under seal, and the action is founded, not upon the contract itself, but only upon a promise implied from the consideration moving between the parties, (the contract being the evidence of a request merely,) the party from whom the consideration proceeded, from which such promise is by law implied, may sue in his own name.

And at the common law, it makes no difference, in the last two cases, whether the contract is written or verbal, nor whether the contract was an original promise as principal, or a contract of suretyship for another.

Accordingly, where the defendant addressed written orders to R. & Co., requesting them to deliver merchandise to S.; in some of the orders adding, "which I will be responsible for," and in others omitting those words; it was *held*, that parol proof to show that R. & Co. were acting as agents for the plaintiffs, and that the merchandise in fact belonged to the plaintiffs, was competent.

*Held*, further, that upon proof of those facts, the plaintiffs might maintain the action for the value or price of the merchandise, in their own name, and without any assignment or transfer from R. & Co.

*Held*, also, that it was competent for the defendant, (at least in respect to those orders which contain a mere request to deliver, without any express promise to pay,) to prove by parol, that the actual agreement, in pursuance of which the orders were drawn, was a parol undertaking to pay the debt of S., to whom the credit was in fact given, (the orders being only the evidence of the defendant's assent from time to time to the delivery,) and that testimony showing to whom the goods were charged upon the plaintiffs' books, was admissible to show to whom the credit was given.

Where an agent sells goods in his own name without disclosing his principal, the principal may, nevertheless, maintain an action for the price or value thereof, and § 113 of the code does not render it necessary that the action should be brought in the name of the agent as the "trustee of an express trust."

A variance between the contract proved and the contract alleged, if not affecting a substantial right, will be disregarded by the court on appeal; and when necessary to the affirmance of the judgment, and the parties have had a full trial, and all the facts and evidence are developed, an amendment to the complaint will be permitted.

THIS was an appeal by the defendant, from a judgment, in favor of the plaintiffs, upon a referee's report. The facts are stated in the opinion.

*D. T. Walden, Jr.* and *Henry B. Cowles,* for the defendant.

The judgment entered on the report of the referee should be set aside; because,

I. There is no evidence of a sale and delivery of the goods, mentioned in the complaint, by the respondents to the appellant, or of any agreement between them for the sale and delivery thereof.

II. The referee erred in admitting in evidence the orders marked exhibits Nos. 2, 3, 4, 5, 6, and 7.  1. They are not drawn upon the respondents, and the respondents are not named or referred to in them.  2. They are not evidence of a request on the part of the appellant to the respondents, to sell or deliver the goods mentioned in them.  3. They are not evidence of a contract between the respondents and the appellant, for the sale and purchase of the goods.  (*Allen* v. *Ayres*, 3 Pick. R. 298–9; *Robbins* v. *Bingham*, 4 Johns. R. 476; *Walsh* v. *Baillie*, 10 Johns. R. 180; *Myers* v. *Edge*, 7 T. R. 254; *Birckhead* v. *Brown*, 5 Hill R. 634; *Newcomb* v. *Clark*, 1 Denio R. 226; *Niles* v. *Culver*, 8 Barb. S. C. R. 205; *Cooper* v. *Watson*, 10 Wend. R. 202.)

III. There is a fatal variance between the complaint and the proof, and the referee erred in refusing to nonsuit the respondents, on the ground stated in the motion for a nonsuit.

IV. The referee erred in admitting evidence of a parol and unwritten agreement on the part of the appellant to pay the respondents.  If there was any such agreement, it was void by the statute of frauds.

V. The respondents are not assignees of the claim of Messrs. Ryder & Co., upon whom the orders are drawn, and with whom the contract in respect of the sale and delivery of the goods was made, and are not the real parties in interest in this action.

VI. The evidence shows that the arrangement under which the orders were given, was made between Messrs. Ryder & Co. and the appellant; and that the appellant was only to be liable in the event of Mr. Seely's making default in payment. No action could, therefore, be maintained against the appellant for the goods delivered under the orders, until a demand of payment of Seely, and refusal on his part.

VII. The goods were in fact sold to Seely, by Messrs. Ryder & Co., and the appellant was a mere guarantor. The respondents are in no way assignees of the contract of guaranty, and if they were, could only maintain an action upon proof of the default of the principal.

VIII. The referee erred in refusing to receive evidence to show that the goods were actually sold to Seely, and evidence tending to show the state of the accounts between Seely and Messrs. Ryder & Co. and the respondents.

IX. The amount of the report is too large, and interest was improperly allowed.

X. The judgment should be set aside, and a new trial granted.

*William H. Leonard,* for the plaintiffs.

I. The orders, in the hands of the plaintiffs, for hammock beds, drawn by the appellant are *prima facie* evidence of goods sold to the drawer, delivered to the payee at his request. It is otherwise in orders for money. (*Alvord* v. *Baker,* 9 Wendell, 323; *Cook* v. *Farrall's Adm'rs,* 13 Wendell, 285.)

II. These orders are original undertakings, not affected by the statute of frauds. The appellant is the purchaser and the debtor for the goods delivered. Seely is not the purchaser or debtor. (1 Comyn on Contracts, 238; *Graham* v. *O'Neil,* 2 Hall's S. C. R. 474; *Meech* v. *Smith,* 7 Wend. R. 315.)

III. The evidence offered and taken *de bene esse,* to prove, by parol testimony, that the goods were sold on the credit of Seely, ought to be disregarded, because it tends to vary or contradict the legal effect of the appellant's written orders.

IV. But admitting that such testimony was properly received, the orders are in conformity with the verbal agreement testified to by Seely, and the orders carry out the agreement by reducing it to writing, expressing the consideration, and are signed by the party to be charged. They are in conformity, therefore, with all the requirements of the statute. (Ch. on Con. 520, &c., 6th ed.; *Marquand* v. *Hipper,* 12 Wend. 520; *Rogers* v. *Kneeland,* 10 Wend. 218.)

V. The Union India Rubber Company can properly maintain an action on these orders for the goods sold. The Riders were agents of the company. The goods belonged to the company, and not to the Riders, who were mere agents. "If a factor, broker or agent, sells goods for his principal, the action may be brought either in his own name or that of his principal." (Comyn on Contracts, 708.) This principle would be qualified if the factor or agent were indebted to the vendee, and the vendee was ignorant of the principal's rights. In this case no damage is done to defendant by a recovery. The Riders could not maintain an action, as they did not own the goods. The ignorance of the appellant that the company were the owners of the goods, will not prevent the action. A principal, although unknown at the time of the sale, may maintain an action on the contract.

VI. The presentation of the bill for the goods in the name of the company, without any dispute as to its regularity, establishes that the appellant knew and assented to the dealing with the company, and waived any objection to payment on that ground. It also establishes the delivery of the goods.

VII. Interest was properly allowed by the referee. There was a definite credit given and stated in the complaint, which is not denied by the answer. If an account is transmitted by a creditor and acquiesced in by the debtor, it becomes liquidated, and interest is allowable. (*Loitard* v. *Graves*, 3 Caines' R. 234.)

VIII. The judgment ought to be affirmed with costs.

BY THE COURT. WOODRUFF, J.—This action is founded upon an alleged sale and delivery by the plaintiffs to the defendant of certain goods, consisting of India rubber hammock beds; and the plaintiffs claim to recover for the amount of the goods, at the prices stated in the complaint, and interest thereon after the expiration of the alleged term of credit, sixty days.

The answer denies the sale and delivery by the plaintiffs to the defendant, and also denies the claim to interest. On the trial it appeared, and is without contradiction, that prior to the

The Union India Rubber Company v. Tomlinson.

22d of August, 1848, William Ryder, Emory Ryder and John Ryder had been engaged in manufacturing India rubber goods; and although the firm name is not positively proved, it is stated by one witness, without denial, that they went by the name of "William Ryder & Brothers," sometimes called "Ryder & Co."

On the 22d of August, 1848, William Ryder and Emory Ryder united with Jonathan Trotter and others in the proper certificate, and by complying with the statute in other respects, they became a manufacturing corporation, under the name of "The Union India Rubber Company," (the plaintiffs in the action,) for the purpose of manufacturing and selling India rubber and other goods. Such India rubber goods as the Messrs. Ryder had on hand at the time went into the company at its formation; but the stock of goods embraced no hammock beds, and it appears that at this time no such beds had been manufactured.

William Ryder thereupon became the treasurer of the company, and Emory Ryder and John Ryder were in the employ of the company, and had charge of the manufacturing department of the company; and at the time of the transaction now in question, the Messrs. Ryder appear to have had no India rubber goods to sell except such as belo ged to the company.

It further appears, that the stor place of business of the company was at No. 19, in Nassau street, in this city; that they came to that store in January, 1849, and that at about the 1st of February, 1849, their sign was put up, with their corporate name in large letters, " Union India Rubber Company," extending the whole length of the store in front.

In February, 1849, one Samuel J. Seely, who, we are led to infer, had made some invention of hammock beds, and held a patent therefor, opened a negotiation at the plaintiffs' store for the manufacture of such beds, and in reference to the price at which they would be manufactured for him. This negotiation appears to have been had with William Ryder in person; but Seely, when examined as a witness for the defendant, and in answer to the defendant's question, " Who manufactured

the beds under your patent?" testified, "I have known them as Ryder & Brothers, and The Union India Rubber Company; I don't know which to call them." Other evidence showed that the plaintiffs did in fact manufacture the beds.

Evidence was given by the defendant, tending to show that one or more conversations were had in the plaintiffs' store between William Ryder, (the plaintiffs' treasurer,) the said Seely and the present defendant, in which the said Ryder refused to deliver beds upon the responsibility of Seely, and in which the defendant agreed to become responsible, and in which it was agreed by Ryder to let Seely have beds on the terms proposed by the defendant, it being a part of the arrangement that the goods were to be "drawn on the defendant's orders, and that he was not to be responsible for any thing but what he did order!"

Whether the responsibility which the defendant then verbally assumed, was an absolute liability as purchaser, or a guarantee of the payment by Seely, is a question which it may be necessary to consider hereafter; but for the present it is sufficient to state these preliminary facts, and that there was evidence warranting the general statement, that the agreement to deliver beds was upon some parol undertaking of the defendant to be responsible for such as should be delivered upon orders drawn by him. Under these circumstances, and under date of March 8th, 1849, the defendant wrote an order in the words following :

"Messrs. Ryder & Co.

"Gent.—Please let Mr. Hill have one of Mr. Seely's patent beds, which I will be responsible for, and oblige

"Your obt. servt.,

"T. E. TOMLINSON."

And the day following, in apparent reference to the same bed, wrote as follows:

"Messrs. Ryder & Co.

"Please send the bed to Washington, per directions of H. D. Hill, and I will be responsible for the amount.

"Your obt. servt.,

"T. E. TOMLINSON."

Which orders were presented at the plaintiffs' store, and the bed delivered to Hill.

Subsequently, other orders were drawn by the defendant, which in their terms were less full and explicit; indeed, the subsequent orders were entirely silent regarding the subject of payment or responsibility, thus:

"Messrs. Ryder & Co.

"Gent.—Please let Mr. Hill have four beds of Seely's patent.

"Yours, very truly,
"T. E. Tomlinson."

"Messrs. Ryder & Co.

"Gent.—Please let Mr. Seely have one of the last made beds, and much oblige

"Your obedient servt.,
"T. E. Tomlinson."

It should be added, that the person named in a part of the orders, and by whom they were brought to the plaintiffs' store, Mr. Hill, was in the employment of Seely, the patentee.

And further, that the orders were presented at the plaintiffs' store to any of their clerks or agents indiscriminately, and the beds delivered in accordance with the orders.

It may also be suggested, that except the fact that the arrangement was made at the plaintiffs' store, and that they had a large sign on the front of the store, there appears in the case no evidence that the defendant, when he drew the orders, had any actual knowledge that any such corporation as "The Union India Rubber Company" existed, or that the parties who were known to some of the witnesses as William Ryder & Brothers, or "Ryder & Co." had given up business and become merged in the plaintiffs' corporation, in whose employment they were, respectively, at the time these orders were drawn.

And on the other hand, it does not appear that either the

defendant or Seely, the patentee, whom the defendant sought to assist, had ever had any business transactions or dealing with the Messrs. Ryder prior to the transactions above detailed.

The counsel for the defendant insists—and it is the ground mainly relied upon in urging a reversal of this judgment—that there was no legal evidence of a sale of goods by the Union India Rubber Company to the defendant, and that the referee erred in admitting the orders in evidence: because, however they might be evidence of a contract between him and Messrs. Ryder & Co., they are not evidence of a sale of goods to him by the Union India Rubber Co., but on the contrary, are conclusive evidence that the goods delivered thereon were delivered as the property of Ryder & Co., and in consummation of a contract thus begun and finished between him and them, and with no one else; and there being neither allegation nor proof of any assignment or transfer by Ryder & Co. to the plaintiffs, they, the plaintiffs, have no cause of action.

We regard the general principle upon which the counsel for the defendant urged this view of the defendant's liability, as too well settled to require extended discussion, viz.: That, as a general rule, a common law contract made with one, cannot be the basis of an action in favor of another; i. e., that a plaintiff cannot maintain an action in his own name upon a contract made to or with a third person. Cases in support of this principle, were cited by the counsel for the defendant, and might be multiplied to an indefinite extent. Several of the cases, which seem at first view to bear most pointedly upon the present case, are as follows:

(*Wright* v. *Russell*, 3 Wils. 530, and 2 Wm. Blackstone, 934.) Russell was bound as surety for the fidelity of one Baird, as clerk to the plaintiff, Wright. Wright took in a partner in his business, and it was alleged as a breach of duty, that the clerk had not paid' over the money of the plaintiff and his partner. It was held, that this was not within the obligation by which the defendant was held as surety.

(*Myers and others* v. *Edge*, 7 T. R. 354.) The defendant, as surety, had become bound, by an order addressed by him

to Myers, Fielden, Ainsworth & Co., to be answerable for goods which they should let the bearer (Duxbury) have, from time to time, until he should countermand the order. One of the partners, Ainsworth, having withdrawn from the firm, it was held, upon the authority of the above case of *Wright* v. *Russell*, that the defendant's obligation, as surety for Duxbury, did not extend to goods sold by the other members of the firm, after the partner, Ainsworth, had withdrawn.

(*Barker, &c., Executors* v. *Parker*, 1 T. R. 237.) Debt on bond, against defendant as surety, that a clerk of the testator should account to the testator and his executors for all moneys, &c., belonging to the testator, his executors or administrators. It was held, that this did not bind the surety for moneys received by the clerk after the testator's death, belonging to the executors, while retained by them in their service in carrying on the testator's business, pursuant to directions contained in his will.

(*Strange and others* v. *Lee*, 3 East, 484.) Debt on bond by plaintiffs as survivors, against defendant as surety, that one Blyth should pay all sums which, in the course of his dealings, he should owe to the plaintiffs and one Walwyn, (partners,) as his bankers ; held not to bind the defendant for dealings had after the death of Walwyn.

(*Western et al.* v. *Barton*, 4 Taunt. 673.) A case similar to the last. Action against sureties on bond ; condition for the repayment to the five obligees of all sums advanced by them as bankers ; held that the bond did not extend to sums advanced by the four survivors acting as bankers after the decease of one of the five.

In *Dance and Girdler*, 1 New Rep. 34, which was an action on a bond payable to the plaintiffs and others, as " Governors of the Society of Musicians," and their successors, conditioned for the accounting to them and their successors for all money received by one Jesse Harwood, upon order of plaintiffs or their successors, the obligees being then an unincorporated voluntary society. The society being afterwards incorporated, it was held that the defendant was not liable for the not ac-

counting for moneys of the society received after the act of incorporation. In all these cases it will be perceived that the doctrine was, that the defendant could only be held liable for the very breach described in the condition of the bonds respectively, and only to the very persons to whom he became bound when he entered into the obligation, *i. e.*, to the persons in whom the legal interest in the contract was vested, and who alone would have had a cause of action had the breach occurred immediately after the execution of the bond or covenant.

I have referred to this particular class of cases, because they are of the description of the leading case relied upon by the defendant's counsel. They, with numerous others which might be cited, fall within another general rule, that if a deed on its face expressly state who are the parties to whom the covenant, stipulation, or obligation is made, no other person can maintain an action in his own name founded thereon.

The opinion of the court, in *The People* v. *Holmes*, (5 Wend. 191, and cases there cited,) that an action of covenant may be brought on the condition of a constable's bond given to "The People," by and in the name of any person to whom the constable has become liable, does not conflict with this general doctrine. The action of covenant in such case, is, I think, sustained upon grounds peculiar to the "instrument" directed by the statute prescribing the security to be given by constables. (2 Rev. Laws, 126.) In those very cases, the court say that the action of debt, which is founded on the obligation, can only be sustained in the name of the obligees.

Nor is the doctrine, that the party to a common law contract is not liable, in an action founded thereon, to any person except to him or them to whom he became bound, confined to instruments under seal.

The difference between the two classes of instruments, is this: If the instrument be under seal, and the obligee be named therein, the terms of the instrument are conclusive. It will be presumed that the parties intended to subject themselves to liability to no other than to those expressly named.

The Union India Rubber Company v. Tomlinson.

But if the instrument be not under seal, a distinction often arises, rendering the inquiry proper—for whose benefit was the contract made? And this inquiry may be made—whether it appears on the face of the instrument that the contract was made for the benefit of a person not named as promisee; or whether it is made to appear, by extrinsic proof, that such a relation subsists between the promisee and the third person, that the promise enures to the benefit of the latter, in such wise that he has the legal interest therein?

The case cited by the defendant's counsel, (*Allen* v. *Ayres*, 3 Pick. 297,) is in accordance with this suggestion. The note was made by Johnson & Ayres jointly and severally, payable to the Bedford Commercial Bank; but the bank refused to discount it, or to permit it to be sued in their names.

The plaintiff sought to recover on the ground that Johnson owed them, and had made the note to be discounted at the bank for them, and procured Ayres to unite with him in the note as security. The court say, that without evidence that the note was intended by Ayres for another use and purpose than the words of the promise import, we cannot see how it can, by any form of action, be converted into a promise to the plaintiff.

A party may undoubtedly so restrict his liability by the terms of his undertaking that none but the promisee can sue thereon; and if the instrument be a promissory note or bill of exchange, the legal effect of which is well settled, no action can be sustained upon the instrument itself, except in favor of a party to it.

The case of *Robbins* v. *Bingham*, (4 J. R. 476,) was a letter of credit, whereby the defendant promised the plaintiff to be security that one Dickinson should pay the plaintiff for goods which he (the plaintiff) should credit Dickinson; and the court held that the defendant was not liable for goods which another person might sell Dickinson; that the defendant having chosen to confine the letter of credit in terms to a particular person, no other could, without his assent, become a party to it.

To the like effect is the case of *Birckhead* v. *Brown*, (5 Hill,

634, S. C. in Error, 2 Denio, 375,) where letters of credit were addressed to a firm in Liverpool. It was held, that the plaintiff in Rio Janeiro could not, by advancing money professedly on the faith of the letter of credit, make himself a party thereto, and maintain an action thereon against the drawers.

In none of these cases was there any privity of contract between plaintiff and defendant apparent upon the face of the instruments, nor was there any evidence, either in the instruments themselves or in the extrinsic facts, showing that the contract sued upon was in truth made for the plaintiff's benefit, either expressly or by legal implication.

Other cases might be cited, to the purport, that where a promise though not under seal, is made to one, in his own right, and for his own sole benefit, he alone can sue upon it, whether the promise be in writing or verbal.

I should not have deemed it necessary to refer to the cases I have already mentioned, had not the defendant's counsel seemed to regard the establishment of these general principles as conclusive against the plaintiffs; and we are not willing to leave it doubtful whether we still entertain the views supporting these general principles, which we intimated on the argument.

We, however, think that these general principles fall far short of establishing the defence in this particular case, for two reasons, either of which may entitle the plaintiffs to sue :

1. That in actions upon a contract, not under seal, the party for whose benefit it was made may maintain the action.

2. That when the action is founded, not upon the contract itself, but only upon an implied promise, the party from whom the consideration proceeded from which such promise is implied by law, may sue in his own name.

And it makes no difference in such cases, whether the contract is written or verbal, nor whether the contract was an original promise as principal, or a contract of suretyship for another.

The leading case on this subject is *Dutton* v. *Poole*, (2 Lev. 210; 1 Vent. 318; Sir T. Raymond, 302;) in which it was held,

that where a verbal promise was made by a son to a father, in which he promised to pay money to a daughter, the daughter might sue and recover.

And the doctrine that, on a promise made to one for the benefit of another, the latter might sue, was more fully sustained in *Martin* v. *Hinde*, (Cowp. 437,) where the promise was in writing, and therein the defendant promised the bishop to retain the plaintiff as curate, and pay him a salary of £50. Held, that the plaintiff could maintain an action thereon. The case of *Piggot* v. *Thompson*, (3 Bos. & Puller, 147,) is still more in point. There the promise was in writing, and was an agreement to pay certain tolls to the treasurer of the commissioners. It appearing that the tolls belonged to the commissioners, it was held to be, in legal effect, a promise to the commissioners themselves, and that they, and not the treasurer, must sue thereon. In a note to that case, the early authorities are collected, and the doctrine fully recognized.

In the case of *Bowen* v. *Morris*, (2 Taunton, 373,) the plaintiff having, as mayor, &c., of a corporation, entered into an agreement with the defendant to sell and convey lands, the defendant agreed to pay him (Morris) the purchase money ; it was held, that the corporation, and not the plaintiff, could maintain the action. In *Bateman* v. *Phillips*, (15 East, 272,) the action was upon an alleged promise, *in writing*, to pay to the plaintiff the debt due to him from one Williams ; and the evidence was a letter, addressed to Mr. Gwyn, in which the defendant requested Gwyn to give Williams indulgence to a certain day, adding, "when I undertake to see you paid." On parol proof that Gwyn was plaintiff's attorney, and acting as such, it was held that the plaintiff could maintain the action, and the parol proof was admissible. In *Garret et al.* v. *Hanley*, (4 Barn. & Cress. 664,) the action was in favor of several plaintiffs, as partners, and was founded upon a guaranty in writing, addressed to John Garrett, one of the plaintiffs, reciting, that the defendant had understood that he (Garrett) had consented to advance money to one Gibbons, and agreeing to provide for "repaying you this sum," &c.

Upon proof that the guarantee, though in terms given to John Garrett, was intended for the benefit of the firm, the plaintiffs were held entitled to recover. See, also, the subject discussed, and the doctrine maintained, that whether the agreement be verbal or written, the law gives the action to the party interested therein. (Buller, N. P. 133, and onward.) In *Berford* v. *Stukey*, (2 Brod. & Bing. 33,) this doctrine is recognized, and the distinction in this respect between contracts under seal and contracts verbal, or in writing, not sealed, is recognized.

In *Carnegie* v. *Waugh*, (2 Dowl. & Ryl. 277,) it was distinctly held, that the doctrine that no person could sue on a contract but one who is made a party thereto, is confined strictly to contracts or deeds under seal.

In *Price* v. *Eaton*, (4 Barn. & Adolph. 433,) the doctrine was also recognized; but the plaintiff was nonsuited, upon the ground that there was no consideration for the promise; that the plaintiff was an entire stranger to the consideration; and, therefore, he not being a party to the contract, and no consideration moving from him, there was no privity of any kind between him and the defendant.

It is upon the principle of these cases, that when a contract is made by an agent for the benefit of his principal, the latter may in general sue and recover thereon; and this rule is carried to such an extent that it has been held, that a mere agent who has no beneficial interest in the contract, cannot maintain an action thereon. Some of the cases referred to above were contracts made with mere agents; and such contracts were deemed, in legal effect, contracts with the principal.

This subject is fully discussed in Paley on Agency, part 4, chap. 5; where, and in the notes to Dunlap's edition, 1847, the cases ancient and modern are largely collected and discussed.

And in Story on Agency, § 160 and § 160 *a*, the distinction in this respect between contracts under seal and contracts not sealed is explained and illustrated. (See, also, Ib. § 270 and §§ 401, 418–429, and numerous cases cited.)

In *Spencer* v. *Field*, (10 Wend. 87,) while the court hold that the plaintiff can not maintain covenant on a sealed agreement made with another as agent, they expressly intimate, that on an agreement, not under seal, he may sue, if the consideration had moved from him. So, in *Sailly* v. *Cleavland*, (10 Wend. 156,) it was held, that on a simple contract, a third person may maintain the action, provided he has an exclusive interest in the subject of the promise.

And in *Beebe* v. *Robert*, (12 Wend. 413,) it is expressly held, that where goods are purchased by an agent, without disclosing his principal, the latter may, on the disclosure of his relation to the purchase, maintain an action for a breach of the contract of sale in his own name.

*Harp* v. *Osgood*, in 2 Hill, 216, while it holds that the action may be brought in the name of the agent, clearly shows that under the statute requiring all actions to be brought in the name of the real party in interest, he, for whose benefit the contract was made, may have the action.

The case of *Taintor* v. *Prendergast*, (3 Hill, 72,) was an action on a contract made with the plaintiff's agent, who dealt with the defendant without disclosing his principal; and upon breach of the contract by the defendant, the principal brought his action to recover the money paid by his agent, and recovered in his own name.

But it is urged that, as the request to deliver the goods, for which this action is brought, is in writing, and addressed to Ryder & Co., no parol proof can be given to show that the Messrs. Ryder were, at the time, in the employment of the plaintiffs, and acting as their agents.

I am not aware of any such rule. The cases above referred to, and those mentioned in the notes to Story and Paley, warrant no such proposition.

The case of *Higgins* v. *Senior*, (8 Mees. & Wels. 440,) went even further, and held not only that a principal might sue on such a contract, and that evidence of such agency did not violate any rule of evidence as an alteration or contradiction of the writing, but also that, although it were an agreement,

which, by the statute of frauds, was required to be in writing, the unnamed principal was bound by it, and could claim the benefit of it against the other party. See, also, *Sims* v. *Bond*, (5 Barn. & Adolph. 393.)

There is nothing in the proof inconsistent with the orders in question. The parol evidence only serves to place the court in the situation in which the parties were when the orders were given, with all the surrounding circumstances, to enable them thereby to discover by whom in fact the sale of the goods was made.

Ryders were the plaintiffs' agents, in charge of the plaintiffs' store, manufacturing the plaintiffs' goods, and selling them to customers. While occupying this position, they receive from the defendant the orders in question, and thereupon they deliver the plaintiffs' goods to the party designated therein.

I have thus far discussed this question without reference to the code. But the case of *Grinnell et al.* v. *Smidt*, (2 Sand. Sup. C. R. 706,) is an authority from which it is sought to be inferred, that the action in this case, although properly brought for the benefit of the plaintiffs, should have been in the name of Ryder & Co., as trustees of an express trust. I think not. If so, then every agent, who sells in his own name, is not only a trustee within § 113 of the code of 1849, but his principal can maintain no action upon such sale without an assignment from his agent; to which I cannot agree, notwithstanding the amendments of 1851 have, it would seem, given some countenance to the suggestion.

The proper construction of this contract is, I think, like the proper meaning of every contract made by a purchaser who buys from the agent or clerk of another, namely, the implied obligation to pay for the goods is an obligation to pay the owner, and may be so treated. There was no promise whatever in most of the orders in question. They are mere requests to deliver the goods; upon that delivery, an implied promise to pay results—and it results to him on whose behalf the party receiving the request was acting at the time as agent.

It may be, that if the defendant had any defence which would avail him, had the action been brought in the name of Ryder & Co., he might set it up against the plaintiffs ; but that is not claimed.

The referee, therefore, in my judgment, committed no error in receiving the orders in evidence ; nor in holding that the plaintiffs, whose goods were delivered, were entitled to sue for their value.

But, in my judgment, he did commit an error, for which the report must be set aside.

The whole of the preceding discussion goes upon the ground, that parol proof of the actual relations of the parties, as among themselves, and to the property sold, was admissible. Some of the orders consist simply of requests " to let Seely have " goods. Upon what terms—at what prices—upon whose credit, was open to explanation. There was nothing in the written paper inconsistent with such explanation.

It was of material importance to inquire, whether the defendant was to be regarded as an original purchaser, or as a guarantor of the payment for the goods by Seely.

The orders were most of them in entire harmony with either view of that subject, and in consistency with either relation to the plaintiffs.

And for the determination of this question, it was competent to inquire, to whom the credit was in fact given, and whether the goods were originally charged to Seely, for whose benefit they were in fact purchased, as the plaintiffs well knew ; and in that connection, whether Seely had paid for them.

The referee should, therefore, have allowed the evidence offered, to show whether the beds named in the orders were included in the account of the plaintiffs' rendered by Ryders, their agents, against Seely.

The evidence upon the subject may or may not affect the finding upon the question, whether the defendant's undertaking was understood at the time of the agreement to be original or collateral. We think the language employed susceptible

of either interpretation. If collateral, the defendant is clearly not liable.

Evidence so important as was proposed, viz., that an account againt Seely was rendered by the plaintiffs, in which the goods were charged to him, would go far to show that the agreement of the defendant, as understood by all parties, was collateral merely.

The judgment must be reversed; the report of the referee be set aside, and the case sent back for further proofs. The testimony given on the former hearing to be permitted to stand, giving to each party an opportunity to obviate any exceptions taken by the other on the former hearing.

Costs of this appeal must abide the event of the suit. (§ 306).

NOTE BY THE REPORTER.—Further testimony was taken in this cause, under the above decision, and the referee again reported in favor of the plaintiffs. From the judgment upon this second report the defendant also appealed, relying upon the following grounds, in addition to those already considered in the foregoing opinion:

1. That no sale of any goods to the defendant was proved; that the plaintiffs did not sell the goods to any one; that their agreement was an agreement to manufacture the beds, and only to manufacture, and that they retained the possession of the beds manufactured, as they properly might, until the defendant assumed to be responsible for the manufacture.

2. That the evidence shows, at most, that the defendant's undertaking was collateral merely, and not being in writing, is void by the statute of frauds.

3. That the referee had computed and allowed interest upon the account found due to the plaintiffs, from an earlier day than was warranted by the testimony.

The cause was decided at the general term, held in November, 1852, upon the second appeal, and the opinion of the court was delivered by WOODRUFF, J. Upon the point first above stated, it was held as follows:

"I do not perceive how we can disregard the finding of the referee upon this point. Although it appears to me that, upon the evidence, if I were to pass upon the question of fact, I should have found that the transaction between Tomlinson and the plaintiffs, was a surrender, by the latter, of their possession and lien upon the goods, upon the defendant's agreement to be responsible for the price of manufacturing ; and, therefore, that the plaintiffs should have complained upon a special agreement of that purport. Yet much of the evidence tends to show that the parties treated the beds as the property of the plaintiffs ; and I am not prepared to say that they had not such a special property in the goods, that they might with propriety be said to sell and deliver in such a sense as to sustain the present complaint.

"Be this as it may, this objection to the mere form of the complaint, is no sufficient reason for reversing the judgment and ordering a new trial. At most, it would only require, (when the parties have had a full trial, and all the facts and evidence are developed,) that we should permit an amendment of the complaint.

"I think we ought not to interfere with the judgment, upon the finding by the referee of the fact of a sale. This finding has some evidence to warrant it, and the conflicting evidence shows, at most, that there is a *variance* between the contract proved and the contract alleged, which, under § § 169, 170 and 176, we may amend or disregard, and for which, if not affecting a substantial right of the defendant, we may not reverse. If the plaintiffs think proper to amend their complaint in this particular, they should be permitted to do so, and the order affirming the judgment may contain a direction to that effect ; and yet, with the finding of the referee on the record, it is doubtful whether such an amendment is either necessary or desirable."

Upon the second point, it was held, that the finding of the referee was conclusive against the defendant, and was sustained by the evidence.

The third objection was decided in favor of the defendant. The court, therefore, solely upon the finding with regard to the

time for which interest should be allowed upon the claim, ordered a new trial, unless the plaintiffs should consent to abate the excess.

Ordered accordingly.