ANDERSON and others *v.* FITZGERALD.

*(Circuit Court, S. D. Iowa.    March Term, 1884.)*

CONTRACT—ACTION BY STRANGER—DEMURRER.
    Defendant entered into a written contract with the Chicago, Burlington & Quincy Railway Company to construct a certain portion of its road, stipulating, among other things, that he "would pay all claims against him, or against any subcontractor under him, for services and labor performed or materials furnished in said work, and to pay, or cause to be paid, all claims growing out of said work, whether against him or any subcontractor under him, for trespass and injury to lands, * * * and all claims for provisions and supplies, and bills for board of men and teams engaged upon said work, and all similar claims; said damages to be estimated and paid as specified in the preceding clause," which provided that "the resident engineer should have the right to estimate the amount of such damages, and to pay the same to the owner or occupant of said property or land, deducting on his first estimate the amount paid from the value of the work done." Another clause provided that "in all cases the amount of claims for labor and material furnished to defendant should be deducted and retained by the company, and paid to the claimants, or held till such dues were paid or otherwise settled." Defendant sublet the work, and his contract with the subcontractor provided that he should have the same right to pay claims against the subcontractor which the railway company had reserved to itself. The subcontractor gave orders to plaintiffs for various sums to different parties, for supplies and labor, which they paid, and for the amount so paid they brought suit against defendant. *Held,* that the

rule that the party to be benefited by a contract not under seal may sue thereon, although the promise be not made to him, did not apply, and that plaintiffs were not entitled to recover.

At Law.

*Baldwin & Wright, Smith McPherson,* and *McPherrin Bros.,* for plaintiffs.

*Hepburn & Thummell, W. W. Morsman,* and *T. M. Marquett,* for defendant.

LOVE, J. This case is before the court upon the defendant's demurrer to the petition.

It is alleged that the defendant entered into a contract in writing with the Chicago, Burlington & Quincy Railway Company to construct certain sections of the company's road in Page county, Iowa, stipulating among other things that the defendant "would pay all claims against him, or against any subcontractor under him, for services and labor performed or materials furnished in said work, and to pay or cause to be paid all claims growing out of said work, whether against him or any subcontractor under him, for trespass and injury to lands, burning fences, destruction of timber, use of lands for waste, and all claims for provisions and supplies, and bills for board of men and teams engaged upon said work, and all similar claims; said damage to be estimated and paid as specified in the preceding clause." In the "preceding clause" referred to it is provided that "if any damage should be done by the party of the first part, or men in his employ, to the lands or property in the vicinity of the work, the resident engineer shall have the right to estimate the amount of such damage, and to pay the same to the owner or occupant of said property or lands, deducting on his first estimate the amount paid from the value of the work done under the contract by said first party." It is further provided in another clause that "in all cases the amount of claims for labor and material furnished to the party of the first part may also be deducted and retained by the party of the second part and paid to such claimants, or held till such dues are paid or otherwise settled."

It is further alleged in the petition that Fitzgerald sublet the work, and in his agreement with the subcontractor it was provided that Fitzgerald should have substantially the same right to pay claims against the subcontractor which the railway company had reserved to themselves. It is further averred that Stout, the subcontractor, gave orders to the present plaintiffs, who were merchants, for various sums to many different parties for supplies and labor, and that the plaintiffs paid the same. The plaintiffs exhibit their account against Stout, amounting to $2,692.57, made up of a large number of items ranging from one to fifty dollars, and consisting of supplies furnished upon Stout's orders to laborers on the work.

The plaintiff seeks to apply to this case the rule that "the party to be benefited by a contract not under seal may sue thereon, although

the promise be not made to him." 1 Chit. Pl. 5, (11th Amer. Ed.; 7th London Ed.) and cases cited; *Schermerhorn* v. *Vanderheyden*, 1 Johns. 139; *Sailly* v. *Cleveland*, 10 Wend. 156; *McMenomy* v. *Ferrers*, 3 Johns. 71; *Lawrence* v. *Fox*, 20 N. Y. 268, and the review of the cases in the dissenting opinion. See, also, *Ball* v. *Newton*, 7 Cush. 599; *Arnold* v. *Lyman*, 17 Mass. 400; *Farlow* v. *Kemp*, 7 Blackf. 544. This rule is well settled, but if we consider the foundation upon which it rests we must, I think, conclude that it has but a limited application in our law; for no doctrines are better settled than that a stranger to a contract and to its consideration cannot ordinarily maintain an action upon the contract, and that one person cannot make himself the debtor of another without his consent, express or implied, by proposing to confer a benefit upon him. 1 Chit. Cont. (11th Amer. Ed.) 74, and cases cited; and especially the cases cited and commented on in note *x*, and *Farlow* v. *Kemp* and *Ball* v. *Newton, supra.* Consent lies at the basis of contracts. There must be consent, express or implied, to make any person a party to a contract. No man can be made a party to a contract merely because it confers upon him a benefit, how great soever it may be. The reason, therefore, of the rule above named must be that where one person for a valuable consideration agrees to pay the debt or discharge the obligation of his immediate promisee to a third person, the consent of such third person to the undertaking may be implied. It may well, indeed, be implied that any person will consent to that which confers a direct pecuniary benefit upon him, unless his dissent appears either by his express words or from the circumstances of the case. It will not be contended, I suppose, that if the party to be benefited by the promise made to a third person to pay money to him should once refuse his assent to the arrangement, he could afterwards maintain an action upon the contract.

Perhaps it would appear, by a close scrutiny of the cases, that the doctrine which the plaintiff relies on proceeds upon promises to pay a sum of money ascertained, or easily ascertainable, to some designated person. In such cases the consent of the party to be benefited may well be presumed, since men do not ordinarily reject clear and certain benefits, which in turn impose upon them no obligation. But where one person agrees with another to perform any uncertain, future, and contingent obligations, which may arise out of contemplated transactions between the immediate promisee and third persons yet unknown and unnamed, it is difficult to see how any contract could be presumed to arise between the promisor and such unknown persons. What parties would be in existence in such case whose assent could be implied? Or is the consent of the unknown parties to remain in abeyance till their claims arise in the future?

Again, the intention of the parties is the matter chiefly to be considered in the construction of contracts. Now, where one person agrees with another to pay the debt, or perform some specific obligations, of

the latter to a designated third person, it may well be inferred that the contracting party intends to bind himself to such third person. The promisor, in such case, could discharge his undertaking by paying a sum of money, or performing a definite obligation, to a party named and designated. But suppose the promisor should agree with his immediate promisee to perform indefinite future obligations, which may arise out of transactions in which the promisee is concerned, involving, possibly, numerous parties; could it reasonably be inferred that the promissor intended to bind himself directly to such unnamed parties upon uncertain future obligations? The promisor might well be content to deal with his immediate promisee, and bind himself directly to him, and wholly unwilling to expose himself to the liability of being sued by many unnamed parties upon contingent obligations.

The foregoing views are expressed with becoming caution. I present them merely as suggestions which may serve to bring the conflicting cases into harmony. Independent of the general reasonings of the court, it is manifest that upon the special facts and circumstances of this case the demurrer is well taken. In the present case the defendant entered into direct covenants with the railway company for its indemnity. The defendant agreed substantially to provide for the payment of all claims and damages which might accure to third persons in the progress of the work, whether such claims and damages should grow out of the operations of the defendants themselves, or their subcontractors, and the contract expressly provided for a method by which the amounts claimed should be ascertained. It was agreed that the railway company might ascertain the sums due in the way stipulated, and withhold the money from the defendant, and pay it to the claimants. By the terms of this contract the defendant had a right to deal directly with the railway company, not with the numberless individuals by whom claims might be asserted against subcontractors. There is an essential difference between an undertaking to answer thus the defendant's promisee, and to meet directly the demands of many unknown claimants upon future and contingent obligations. The defendant might well intend by his contract to do the one and not the other. In what way was the defendant to adjust, settle, and ascertain the sums due upon the innumerable claims which might be asserted against his subcontractors? Can it be presumed that, because the defendant was willing to stipulate that the railway company should ascertain the sums due and pay them, the defendant himself would undertake their adjustment, and expose himself to numberless suits by dissatisfied claimants? Would not such a presumption result in extending the defendant's contract beyond what the defendant can reasonably be inferred to have intended? Because he was willing to expose himself to the suit of his immediate promisee, can it be inferred that he intended to make himself liable to many suits by unknown parties upon numberless contingent obligations?

Again, the contract in question imposed upon the immediate par-

ties to it mutual and dependent obligations. It contemplated future duties to be performed by both parties. The defendant could not be held bound to pay off and discharge all debts, claims, damages, etc., that accrued in the progress of the work, unless the railway company fulfilled the contract on its part. Now, in this common-law suit by a merchant for supplies to a subcontractor, could the defendant plead a breach of the contract by the railway company, and could the court, in a trial before a jury, go into an inquiry as to the transactions between this defendant and the railway company, showing a breach of the covenants of the contract, in order to bar the plaintiff's action?

The court sees almost insuperable difficulties in maintaining this action in a court of common law. In the first place, how was Fitzgerald to ascertain what sums are due to the numberless persons—merchants, laborers, mechanics, teamsters, material-men, etc.—who may have entered into contracts with or performed labor for his subcontractors? What *data* has he with which to adjust and settle their various demands? Suppose the claims of the various parties referred to be contingent and disputed, how can he assume, as between the claimants and his subcontractor, to determine them? Again, suppose Fitzgerald should make a mistake, and, upon his own adjustment of claims against the subcontractor, pay to claimants sums not due them; would the subcontractor be bound by such an adjustment? Might he not show that Fitzgerald had paid sums not due from him, and compel payment a second time of sums so paid by Fitzgerald to claimants on his account? Again, suppose judgment be entered here against the defendant in the several actions now pending; would the subcontractor, Stout, be bound by the judgments? He certainly would not, and if the defendant should pay such judgments it would be open to the subcontractor to compel him to pay them over again, by showing either that nothing was ever due to the claimants, or that, if anything was originally due, full payment or satisfaction had been made by the subcontractor himself.

In deciding this question, however, I rely rather upon the decision of the supreme court in the case of *National Bank* v. *Grand Lodge,* 98 U. S. 123, than upon any reasonings of my own. I can see no distinction in principle between that case and the present.

Demurrer sustained.

The decision upon this demurrer also disposes of *Baldwin* v. *Fitzgerald, S. M. Crooks & Co.* v. *Same, J. M. Crooks & Co.* v. *Same.*